## BOKER *v.* UNITED STATES (No. 426).[1]

NICKEL-PLATED IRON OR STEEL SHEETS, WELDED BY ROLLING.

A thin plate of iron or steel, common or black, three-eighths of an inch thick, on which a thin sheet of nickel or copper of the same dimensions has been laid and then subjected to a process of hot rolling to weld the metals together, is not to be classified as a sheet of iron or steel; and since in thickness it exceeds No. 10 wire gauge, it was not dutiable under either paragraph 126 or paragraph 131, tariff act of 1897, but under paragraph 193 of that act as "manufactures of metal."

### United States Court of Customs Appeals, May 31, 1911.

APPEAL from United States Circuit Court for Southern District of New York. 180 Fed. Rep., 959 (T. D. 30841); G. A. 6613 (T. D. 28230).

[Affirmed.]

*Walden & Webster (Howard T. Walden* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The importations involved in this case were made under the tariff act of 1897. The appellants brought into this country large shipments of certain flat metal sheets of various dimensions, composed of iron or steel faced with nickel or copper.

The collector classified these importations as "manufactures of metal" under the provisions of paragraph 193 of the act, and assessed them for duty at 45 per cent ad valorem.

The importers filed their protest, and contended that the merchandise fell within the provisions of paragraphs 131 and 132 as sheets of iron or steel thinner than No. 10 wire gauge, valued at 3 cents per pound or less, coated with nickel or copper, and was dutiable at seven-

---

[1] Reported in T. D. 31678 (20 Treas. Dec., 1262).

tenths of 1 cent a pound under the first paragraph, with two-tenths of 1 cent a pound additional thereto under the second paragraph.

The protest was heard upon evidence by the board and was overruled. The case was thereupon appealed to the United States Circuit Court for the Southern District of New York, where additional testimony was taken. Upon consideration the court affirmed the decision of the board, and the appellants now pray for a reversal of that judgment.

There is very little if any controversy concerning the facts in this case. The merchandise is manufactured in Germany. A single plate of iron or steel, common or black, three-eighths of an inch thick, is used for the body of the article. A thin sheet of nickel or copper of equal length and breadth is then laid upon the iron or steel, and these metal layers are together subjected to a process of hot rolling. This welds the metals together and greatly reduces their combined thickness.

As already stated, the original iron or steel body is three-eighths of an inch thick. The layer of nickel or copper varies in thickness from $1\frac{1}{2}$ to 20 per cent of the iron or steel. At the lesser of these proportions such a nickel layer, according to the testimony, would be about three times as valuable as the iron or steel plate to which it was welded. After the rolling process the metal sheets vary in combined thickness from 15 to 70 one-thousandths of an inch. The sheets vary in length and breadth to suit the demands of buyers. The importer testifies that the trade knows these articles variously as iron or steel sheets nickel plated, nickel covered, or nickel coated. As imported the sheets are valued at more than 3 cents a pound for the combined metals, but less than 3 cents a pound for the constituent iron or steel if taken alone.

With these facts as the premises the question is whether the importation falls within the provisions of paragraphs 131 and 132 of the act, which read as follows:

131. Sheets of iron or steel, common or black, of whatever dimensions, and skelp iron or steel, valued at three cents per pound or less, thinner than number ten and not thinner than number twenty wire gauge, seven-tenths of one cent per pound; thinner than number twenty wire gauge, and not thinner than number twenty-five wire gauge, eight-tenths of one cent per pound; thinner than number twenty-five wire gauge and not thinner than number thirty-two wire gauge, one and one-tenth cents per pound; thinner than number thirty-two wire gauge, one and two-tenths cents per pound; corrugated or crimped, one and one-tenth cents per pound: *Provided,* That all sheets of common or black iron or steel not thinner than number ten wire gauge shall pay duty as plate iron or plate steel.

132. All iron or steel sheets or plates, and all hoop, band, or scroll iron or steel, excepting what are known commercially as tin plates, terne plates, and taggers tin, and hereinafter provided for, when galvanized or coated with zinc, spelter, or other metals, or any alloy of those metals, shall pay two-tenths of one cent per pound more duty than if the same was not so galvanized or coated.

It will be observed that paragraph 131 provides for sheets of iron or steel, common or black, of whatever dimensions, thinner than No. 10 wire gauge, valued at 3 cents per pound or less, and that paragraph 132 provides for an additional duty upon all such articles if coated with other metal.

The appellants contend that the imported articles fall within these terms; that they are sheets of iron or steel, common or black, thinner than No. 10 wire gauge, valued at 3 cents per pound or less, and coated with other metal. The Government denies each of these allegations.

It seems clear from the foregoing statement that the articles in question are not sheets of iron or steel when they arrive in this country and that they could not have been so described at any time in their history. At importation they were not such sheets because they were combined with other metals, and at the time when such combination was effected they were not such sheets because their thickness took them out of that class and placed them within the class of plates. Paragraphs 126 and 131 both provide, in effect, that such a piece of iron or steel shall be held to be a sheet if thinner than No. 10 wire gauge, but if not thinner than No. 10 wire gauge it shall be held to be a plate. The metals in question when combined with copper or nickel by the rolling process were three-eighths of an inch thick. It is conceded that this thickness substantially exceeds No. 10 wire gauge. The articles at the time of their union with other metals were therefore not sheets but plates. If the welding process may properly be called "coating" the iron metals, it was not sheets that were so coated, but plates. Appellants therefore fail in their contention that the imported articles were sheets of iron or steel, common or black, for they were not such sheets in their condition at importation nor were they such sheets in their condition when covered by the other metals.

The process whereby the copper or nickel is added to the iron or steel has been already described. This process does not seem to come within the provision of paragraph 132 for cases of iron or steel sheets "galvanized or coated" with other metals. It is not claimed to be a process of galvanization, but appellants contend that it is a process of coating. However, the welding together of pieces of metal by a process of hot rolling such as was pursued in this case does not seem to come within the meaning of the word "coating." And especially is that true where, as in this case, the word is used in association with "galvanized," which expresses a method of covering one metal by another wholly unlike the process of welding them together by pressure.

Inasmuch, therefore, as the imported articles fail in two essential particulars to meet the requirements of paragraphs 131 and 132, the collector was right in classifying them under paragraph 193. And the judgment of the Circuit Court to the same effect is therefore *affirmed.*