UNITED STATES v. C. J. TOWER & SONS (No. 3220)[1]

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein*, special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument October 14, 1929, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court sustaining the claim of importers that the merchandise involved, to wit, certain borated copper-clad wire, was dutiable at the rate of 25 per centum ad valorem plus two-tenths of 1 cent per pound under paragraph 316, Tariff Act of 1922.

The Government contends that it should be assessed with duty at 35 per centum ad valorem under the provision found in the latter part of the paragraph. The claim of the importer and that of the Government are both made under paragraph 316, which is as follows:

PAR. 316. Round iron or steel wire, not smaller than ninety-five one-thousandths of one inch in diameter, three-fourths of 1 cent per pound; smaller than ninety-five one-thousandths and not smaller than sixty-five one-thousandths of

---

[1] T. D. 43647.

one inch in diameter, 1¼ cents per pound; smaller than sixty-five one-thousandths of one inch in diameter, 1½ cents per pound: *Provided, That all of the foregoing valued above 6 cents per pound shall pay a duty of 25 per centum ad valorem;* all wire composed of iron, steel, or other metal, nor specially provided for (except gold, silver, or platinum); all flat wires and all steel in strips not thicker than one-quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, 25 per centum ad valorem: *Provided, That all wire of iron, steel, or other metal coated by dipping, galvanizing, sherardizing, electrolytic, or any other process with zinc, tin, or other metal, shall pay a duty of two-tenths of 1 cent per pound in addition to the rate imposed on the wire of which it is made; telegraph, telephone, and other wires* and cables *composed of iron, steel, or other metal* (except gold, silver, or platinum), *covered with or composed in part of* cotton, jute, silk, enamel, lacquer, rubber, paper, *compound, or other material, with or without metal covering,* 35 per centum ad valorem; wire rope and wire strand, 35 per centum ad valorem; spinning and twisting ring travelers, 35 per centum ad valorem; wire heddles and healds, 25 cents per thousand and 30 per centum ad valorem.

The court below approved the position of the importer to the effect that the wire was properly dutiable at the appropriate rate under the first part of paragraph 316 and also chargeable with duty at two-tenths of 1 cent per pound, under the second proviso, for coated wire. The Government's position is that this is telegraph, telephone, or other wires "covered with or composed in part of" borax, and that the term "with or without metal covering" indicates its dutiability under the last part of the paragraph at 35 per centum ad valorem.

The testimony shows, without dispute, the following facts concerning the merchandise:

An ingot of steel of about 1 inch in diameter in varying lengths with a maximum of about 30 inches, in cylindrical form, is first prepared. About this is superimposed a copper sheath in the form of copper tubing. The total outside diameter would be in the neighborhood of 1¼ inches at that time. The next step, which is one of the vital steps in the process, is the welding of the copper to the core, which is done by a pressure weld so that the characteristics of the copper are not destroyed. Then the article is reduced from the large size by hot rolling such as is practiced in ordinary mills. After it is reduced to about three-quarters of an inch in diameter, they then employ wet swaging, which merely mechanically reduces the diameter and increases the length of the metal. It is then put on a wire-drawing machine and drawn to the size desired. The finished sizes run from eight one-thousandths to twenty one-thousandths of an inch. After it comes out of the drawing machines it is bare copper-clad wire. It is next borated—i. e., it is treated with a surface coat or a superficial film of borax by being drawn through a thin solution of borax and then passed through an electric furnace

for the purpose of evaporating the water and setting the borax coating. The testimony shows that the borax coating is not an insulation but facilitates the sealing of the glass in the lamp to assist the evacuation; that it is a flux and that it remains on the wire until it goes through the process of sealing, when it is absorbed by the glass and disappears, and that its only purpose is the protection of the seal until it is put in place. The witness stated that the wire, after the borating process, weighs less than it did before, because the borax acts as a scavenger and takes from the copper the copper oxide and removes it and leaves the wire clean to assist in the sealing in of the lamp.

In this court it is not disputed that the wire having the copper sheath around it is a wire of metal coated with metal.

Apparently the collector, in his classification of the merchandise, in view of his understanding of the meaning of the term "with or without metal covering," regarded the copper coating of the same as of no importance.

It is the position of the importer and the court below that the merchandise is a coated wire and is dutiable at an appropriate rate under the first part of the paragraph and also subject to the duty under the second proviso, and with this view we agree.

The Government argues that the merchandise is "covered with or composed in part of * * * compound or other material" in so far as it is covered with borax, and dutiable under that portion of the paragraph applying to telegraph, telephone, and other wires, and seeks to distinguish between the words "coated" and "covered."

The part of the paragraph which reads, "telegraph, telephone, and other wires * * * covered with or composed in part of cotton, jute, silk, enamel, lacquer, rubber, paper, compound, or other material, with or without metal covering," would seem to refer especially to wires which have been covered with an insulating material. In that connection it is easy to visualize various kinds of wires in common use which are covered with rubber, or knitted or plaited cotton, jute, silk, or other covering material. It is not contended that the wire at bar is of this character unless the thin temporary coating of borax puts it within this class.

We think the merchandise is aptly described in the first part of paragraph 316 and the second proviso, and is not covered by the latter part. Without determining what is meant by the phrase "with or without metal covering," we do not think it has the meaning contended for by the Government, to wit, that any kind of metal wire when coated with borax like the wire at bar makes it a covered wire within the meaning of the term used in the "telegraph, telephone, and other wire" provision. A wire composed of metal covered

with cotton or any other of the materials mentioned in the latter provision, covered for the purpose of insulation, would respond to the paragraph regardless of whether the wire, before being covered, was coated with copper or other metal. In other words, if it was a plain wire and was covered as indicated by cotton, etc., it, of course, would be dutiable under the telegraph and telephone proviso without regard to the proviso "with or without metal covering," inasmuch as this phrase has no relevancy to the "coating" of the wire before being covered with the materials indicated.

No applicable citations of authority on the questions involved herein were furnished by either the Government or the importer except the Government referred the court to *Boker* v. *United States*, 168 Fed. 464, which reversed the decision of the Board of General Appraisers (now the United States Customs Court) and which decision only went to the effect that wire upon which a nickel coat was placed, in a manner similar to that at bar, was held to come within the term "coated." This decision, together with *Boker* v. *United States*, 2 Ct. Cust. Appls. 162, T. D. 31678, supports the decision of the court below in this case.

The judgment of the United States Customs Court is *affirmed.*